## In re Hilltop Club's Application

*Wellington H. Rosenberry, Jr.*, for applicants.

*Samuel H. High*, of *High, Dettra & Swartz*, for exceptants.

KNIGHT, P. J., January 27, 1939.—The applicants have applied for a charter of a proposed corporation, to be known as the "Hilltop Club". The purpose of the proposed club is thus set forth in the application: "The purpose for which the Corporation is formed is, to unite members of the colored race, both male and female, for their advancement physically, morally and socially; to provide indoor and outdoor social and athletic entertainment; to provide lectures and promote discussions on political issues and to maintain reading rooms and club rooms."

The six exceptions filed may be summarized as follows: That the application is not made in good faith and for the purposes set forth in the application, but for the purpose of obtaining a liquor license; that the applicants have been conducting a club or gathering place in the proposed club premises since May of last year, in a way offensive to the neighbors; and that the grant of a charter would be against the public interest.

From the testimony of the protestants it appears that some of the near neighbors have been annoyed by the noise of the orchestra, and the boisterous conduct of those attending the parties, and in going to or returning home from the same.

It also appears that the clubhouse was raided by agents of the Liquor Control Board in the fall of last year. Some liquor was found on the premises, but it was claimed by individuals as their private property, and no arrests were made. There was no evidence of any sale of liquor produced.

The main objection of the protestants seems to be that the establishment of a club for colored people at this location would depreciate the value of the neighboring properties.

Section 201 of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, provides that these corporations may be formed for any purpose or purposes which are lawful and not injurious to the community. Section 207 of the same act provides in part:

"If the court shall find the articles to be in proper form and within the provisions of this act, and the purpose or purposes given in the articles to be lawful and not injurious to the community, the court shall so certify on the articles . . . otherwise, the court shall refuse the application for a charter."

A hearing was held before the writer of this opinion, in which testimony was taken on behalf of the applicants and the protestants.

From the testimony of the applicants, it appears that the club now consists of but six members, and that they have refused to take additional members until a charter was obtained, this action being taken on the advice of counsel.

The club has rented a house and about 80 acres of land in Lower Moreland Township. The members have laid out a baseball diamond where games are played during the summer months; they have also constructed a tennis court, which is used by the members and their friends. Some alterations have been made in the old dwelling used as a clubhouse, and in this building parties have been held on various occasions during the summer months. These parties have been in the nature of "pay parties", where the guests paid a small charge to defray the cost of the orchestra. The ultimate aim of the applicants is to establish a country club for members of the colored race.

Whenever exceptions are filed against the granting of a charter, the court should receive evidence of the circumstances surrounding the application, for it is our duty under the act, not only to see that the application is in proper form, but that the proposed corporation will not be "injurious to the community": Nonprofit Corporation Law, supra, art. II, sec. 207.

This application is not in proper form. Paragraph 2 of section 203 of the Nonprofit Corporation Law provides as a necessary requirement of the application that it must state "The location and post-office address of

its initial registered office in this Commonwealth." The present application merely states that "The name of the corporation shall be the 'Hilltop Club', of Philmont, Pennsylvania." Whether "Philmont" is the post-office address of its initial office is left unsaid.

This, perhaps, is a minor defect, but paragraph 3 of section 203 requires, among other things, that the application shall set forth "that it is a corporation which does not contemplate pecuniary gain or profit, incidental or otherwise, to its members." This declaration is the very gist of the application, and is omitted in the present case. We deem the omission fatal to the application in its present form. We could, perhaps, stop here, but we deem it advisable to express our views on the exceptions.

The purposes, as set forth in the application, are entirely lawful, but exceptants charge that the applicants are not sincere, but want to obtain a charter in order to get a license to sell liquor. There is no direct evidence to sustain this charge, but exceptants point to the past history of the club, and the surrounding circumstances, as giving rise to an inference of the truth of the charge. Assuming that one of the objects of the applicants is to obtain a liquor license, can we refuse a charter for this reason? The sale of liquor is now lawful, and we cannot assume that the club will sell liquor in an unlawful manner, or that the Liquor Control Board will grant a license to a club that could not, or would not, comply with the requirements of the law and regulations of the board.

Savidge on Pennsylvania Corporations (2d ed.) vol. 1, page 101, sec. 79, states:

"If the object is lawful it cannot be assumed that the corporation will be given to unlawful purposes, and the Court cannot reject as not being a proper purpose one authorized by statute."

Will the proposed corporation be injurious to the community? What is meant by the word "community" in the statute? We have been unable to find any case under the

Nonprofit Corporation Law, or the prior acts, which contained the same words, in which the courts have interpreted the word "community" as used in these statutes. We are of the opinion that the legislature had in view not the immediate neighborhood of the activities of the corporation, but the effect of these activities on the community, used in a larger sense, and as tending to injure the public at large. If the applicants conduct a disorderly place so as to disturb the neighbors, they have their remedy. It may be that the establishment of a country club for colored people, in this location, will depreciate the value of surrounding real estate, but this is not a sufficient reason for refusing a charter.

The evidence shows that the applicants have been using the premises leased by one of their number for athletic entertainments, and as we said heretofore we cannot assume that the law will be violated; rather the presumption should be otherwise. Whether the applicants will be able to accomplish all the purposes contained in the application is questionable, but they are all lawful purposes.

Counsel for exceptants argues in his brief that all the purposes of the proposed corporation could be accomplished without a charter. This could probably be said of any group that desired to incorporate under the Nonprofit Corporation Law, and constitutes no good reason for refusing a charter. Granting the application will make nothing lawful which would be unlawful without a charter, except perhaps the sale of liquor, and there is no evidence that there will be unlawful sales if a charter is granted.

And now, January 27, 1939, after fully considering the application and the evidence, the exceptions are dismissed, but the application is refused because it is not in proper form, and does not meet the requirements of the act.